IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SEAN STERLING                         *

    Petitioner,                       *          Civil Action No.: RDB 11-3209

        v.                       *

UNITED STATES OF AMERICA               *          Criminal Action No.: RDB 06-0179

    Respondent.                       *

*          *          *          *          *          *          *          *          *          *          *          *          *

## MEMORANDUM OPINION

The *pro se* Petitioner Sean Sterling ("Petitioner") has filed a Motion to Vacate, Set Aside, or Correct Sentence (the "Motion") pursuant to 28 U.S.C. § 2255.  (ECF No. 372).  Petitioner moved to vacate and set aside his sentence on the following grounds: (1) his counsel's assistance was ineffective, in violation of Petitioner's Sixth Amendment rights; (2) the government failed to disclose *Brady*[1] evidence material to his defense; (3) the government did not have jurisdiction over the murders; and (4) the courtroom environment was inherently prejudicial, in violation of Petitioner's Fourteenth Amendment rights.  *Id.*  Upon review, this Court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons stated below, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 372) is DENIED.

## BACKGROUND

On February 7, 2008, *pro se* Petitioner Sean Sterling ("Petitioner") was charged in a Fourth Superseding Indictment with two counts of possession of a firearm in furtherance of a drug trafficking crime resulting in death (Counts Three and Four).  Judgment 1, ECF No. 264.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

He was found guilty by a jury on both counts on December 3, 2008, and received concurrent sentences of 264 months of imprisonment and five years of supervised release.  Verdict Form 1, ECF No. 238; Judgment 2, ECF No. 264.  The following statement of facts was informed by the Government's Opposition to Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (Gov.'s Opp'n 7, ECF No. 386).

On May 28, 2001, in Baltimore, Maryland, Petitioner drove Perry Austin, William Deshields, and Corey Smith in his Nissan Pathfinder to find Kenyatta Harris.  *Id.* at 3.  A drug organization led by Jermaine Bell had put a $10,000 contract out for the murder of Harris, who was a member of a rival drug organization.  *Id.* at 2-3.  Petitioner found Harris driving and followed him until he stopped on the 1600 block of Thomas Avenue.  *Id.* at 3.  Austin and Deshields got out of the car after retrieving two guns which were hidden in the sunroof of the Petitioner's Pathfinder.  *Id.*  After Petitioner drove away from the scene, Austin and Deshields shot and killed Harris, and then returned to Petitioner's car around the block where they stored the guns in the sunroof before leaving.[2]  *Id.* at 3-4.  Petitioner and Corey Smith collected the $10,000 from Bell, which they split with Austin and Deshields.  *Id.*

On June 26, 2001, Petitioner drove the same group of individuals—Austin, Deshields, and Corey Smith—to find Angelo Stringfellow, for whose death Bell had placed a $25,000 contract.  *Id.*  The men found Stringfellow at a sham drug deal Corey Smith had set up, and Deshields left Petitioner's car with a gun secured from the Pathfinder's sunroof.  *Id.*  Although Deshields had planned on shooting Stringfellow, he returned to the Pathfinder without doing so.  *Id.*  Petitioner drove the group away, later picking up Linwood Smith.  *Id.* at 5.  Using a tip, they

---

[2] Deshields testified that he and Austin left the scene in a different car from the one driven by Petitioner. Pet'r's Am. Reply 4, ECF No. 393.

found Stringfellow sitting in his car by a club.  *Id.* at 4-5.  Petitioner parked around the corner, while Brown and Deshields took two guns from the sunroof, approached Stringfellow's car, and began shooting at him from opposite sides.  *Id.* at 5.  Stringfellow was killed, and a woman who had been standing outside Stringfellow's driver's side door was shot, but survived.  *Id.*  Brown and Deshields returned to Petitioner's car, put the guns in the sunroof, and Petitioner drove away.  *Id.*  The next day, Petitioner drove Corey Smith and Brown to collect the murder fee from Bell, which was again split among the group.  *Id.*

Petitioner remained connected to the murder weapons in the period between the murders.  *Id.*  In particular, on June 17, 2001, he drove Corey Smith, Andre Brown, and James Servance, also known as "Roach," to a restaurant.  *Id.* at 5-6.  Servance carried into the restaurant the same gun used earlier to murder Harris.  *Id.* at 6.  Once inside, Servance got into an argument with a man named Herman Saunders, who then took the gun away from Servance.  *Id.*  Servance and Saunders both exited the restaurant.  *Id.*  Upon seeing what had occurred, Petitioner took a gun from his sunroof—the same one that would later be used in the Stringfellow murder—and approached Saunders.  *Id.*  Petitioner and Saunders drew their weapons at one another, and when Petitioner began shooting, Saunders returned fire.  *Id.*  Petitioner and the passengers in his car escaped unharmed, while Saunders suffered bullet wounds in both hands.  *Id.*  Petitioner also used his Pathfinder to transport Brown to the Hanover Street Bridge in south Baltimore, where at least one of the guns was thrown into the water.[3]  *Id.* at 5.

Petitioner was arrested and charged in 2008 along with six co-conspirators.  A jury found him guilty on December 3, 2008.  Verdict Form 1, ECF No. 238.  Petitioner appealed his case to the United States Court of Appeals for the Fourth Circuit.  The Court of Appeals affirmed this

---

[3] Corey Smith said there was one gun thrown over the bridge, while Linwood Smith said there were two.  Pet'r's Am. Reply 5, ECF No. 393.

Court's decision on November 12, 2010. Judgment No. 09-4205 at 1, ECF No. 335. Pending before this Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 372). He asserts claims of ineffective assistance of counsel, a *Brady* violation, improper jurisdiction, and an inherently prejudicial courtroom environment in violation of his Fourteenth Amendment rights. *Id.*

## STANDARD OF REVIEW

### I. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim requires a petitioner to satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts must observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. Actions falling below an objective standard of reasonableness are "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The second, or "prejudice," prong requires the defendant to demonstrate that his counsel's errors deprived him of a fair trial. *Id.*

The United States Court of Appeals for the Fourth Circuit has previously noted that "[t]he defendant bears the burden of proving the first prong under the Strickland test," and unless this burden is met, "a reviewing court does not need to consider the second prong." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1297 (4th Cir. 1992). The Court of Appeals has also noted that the mere possibility of a different trial result does not satisfy the burden placed on the defendant. *See Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986). As a result, ineffective assistance

of counsel claims may be disposed of solely based on deficient showing of prejudice.  *See Strickland*, 466 U.S. at 697.

**II. *Brady* Evidence**

The prosecution has a duty to turn over exculpatory evidence to the defense.  *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Failure to do so violates a defendant's due process.  *Id.*  A *Brady* violation is present if: (1) the evidence was favorable to the defendant because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material to the defense.  The first prong is self-explanatory.  The second prong refers to evidence which is "information . . . known to the prosecution but unknown to the defense*." United States v. Agurs*, 427 U.S. 97, 103 (1976).  The final prong is met if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley v. U.S.*, 473 U.S. 667, 682 (1985).

## DISCUSSION

**I.    Petitioner's Ineffective Assistance of Counsel Claim**

Pursuant to the test laid out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), an ineffective assistance of counsel claim is only successful when a Petitioner can sufficiently demonstrate two factors.   Those factors are whether (1) the attorney's performance fell below an objective standard of reasonableness, and (2) if Petitioner suffered actual prejudice.  As to the first prong, there is a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance."  *Id.* at 689.  As to the second prong, actual prejudice is shown if the counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687.  It requires a showing that, "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

Petitioner argues that his trial counsel provided ineffective assistance when he failed to adequately investigate exculpatory evidence tending to prove that the murders of Stringfellow and Harris were related not to the alleged drug conspiracy, but instead to retaliation for the earlier murder of Damon Burrell, a close friend of Bell.  Pet'r's Mot. 16-17, ECF No. 372.[4] Specifically, Petitioner argues that had counsel, during his cross-examination of the co-conspirators, referred to Burrell by his nickname "Curly," the co-conspirators would have identified Burrell's death as the motive for the murder of Stringfellow and Harris.  Pet'r's Am. Reply 2, ECF No. 393.  Petitioner also argues that his counsel erred, and thereby rendered ineffective assistance, when he advised against allowing corroborating testimony as to the reason for the contracts from Jermaine Bell.  *Id.* at 2.  For the reasons outlined below, both of Petitioner's arguments fail to establish both prongs of the *Strickland* test.

   a.  *Counsel's failure to prove the murders were not drug-related does not show ineffective assistance of counsel.*

Petitioner posits that his attorney failed to properly cross-examine all of the co-conspirators regarding the reason Bell ordered the killings, and that had he done so the testimony would have revealed important exculpatory evidence that showed the murders were retaliatory in nature rather than drug-related.  *Id.* at 2.  However, Petitioner's allegations fail to meet the *Strickland* test's first prong because they do not sufficiently overcome the strong presumption that his counsel performed within the "wide range of reasonable professional assistance."  466 U.S. at 681.  The Court of Appeals for the Fourth Circuit specifically addressed the issue of how an attorney approaches a cross-examination in *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998).  There, the Court held that trial's counsel's failure to exhaustively cross-examine a

---

[4] Damon Burrell was murdered by Donnell Harris, the brother of Kenyatta Harris and cousin of Samuel Garrett.  Garrett ran the drug organization to which Kenyatta Harris and Stringfellow belonged.  Gov.'s Opp'n 7, ECF No. 386.

witness who was present when the murder occurred did not demonstrate ineffective assistance, particularly when counsel's decision not to press the co-conspirator was a strategic decision not to risk adverse effects on the defense.  *Id.*  Here, trial counsel made a similar strategic decision in deciding not to pursue the retribution theory in light of the fact that no co-conspirators testified in support of that claim.[5]

Corey Smith's direct examination and cross-examination is demonstrative in this point. Under direct examination, Smith testified that the contract for Harris arose from a "neighborhood beef" over selling drugs in that area and that the contract for Stringfellow was "over the same thing."  Test. of Corey Smith 39-40, ECF No. 308.  In cross-examination, trial counsel also inquired as to why the contracts were drawn.  Petitioner's counsel specifically brought up Burrell, referring to him by his full name, and also described him as "Kenyatta Harris's brother," who killed a young man who was "like a brother to Jermaine Bell in 1999 and 1998."  *Id.* at 16. Smith's memory was not triggered by any of these names or descriptions, saying "I don't know Donnell.  You keep talking about Donnell.  I don't even know who that is [sic]."  *Id.*  At this point, similar to the attorney in *Quesinberry* who chose not to further examine a witness because it would likely be fruitless or risky, Petitioner's counsel had to make a strategic decision whether to pursue a particular line of questioning.  It is evident that, under the circumstances at the time, pursuing the issue of retribution appeared futile.  The fact that a specific nickname was not used

---

[5] *See* Test. of Corey Smith 39-30, ECF No. 308 (describing the contracts as issued over "beef" in the neighborhood stemming from Bell not wanting Harris, Stringfellow, and "a guy named Bo" to sell drugs in his neighborhood); Test. of Perry Austin 23-24, ECF No. 309 (testifying that he had heard Bell had put a contract on Harris because Harris was "getting into his pockets," meaning "he was slowing down his money . . . taking sales from a drug area"); Test. of Linwood Omar Smith 43, 87, ECF No. 311 (testifying that Stringfellow said "him [sic] and Jermaine Bell was [sic] going through a beef . . . that Jermaine Bell was trying to move in on his territory" and "come around the area and sell drugs"); Test. of William Deshields 196-198, 115-116, ECF No. 313 (testifying that, to the best of his knowledge, the turf war over drug territory was the "beef" leading to the Harris and Stringfellow murders).

does not illustrate that the attorney's performance fell below an objective standard of reasonableness.  Therefore, Petitioner failed to make out a colorable argument under the first *Strickland* prong.

Secondly, even if counsel's representation were ineffective, the second prong of prejudice cannot be met because Petitioner has not shown that his counsel's performance deprived him of a fair trial which, but for counsel's errors, would have proceeded differently. According to Petitioner, had trial counsel used Burrell's nickname during the cross-examinations of co-conspirators, they each would have remembered and identified Burrell's murder as the motive behind the Stringfellow and Harris murders.  The jury would then have acquitted him under 18 U.S.C. 924(j), Petitioner asserts, because the requisite drug trafficking conspiracy would be lacking.  Pet'r's Am. Reply 2, ECF No. 393.

 Contrary to Petitioner's arguments, however, there is no reasonable probability that, but for counsel's error, the outcome of the case would have been different.  *See Strickland*, 466 U.S. at 694 (defining a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome").  An argument based on the "mere possibility" that a proceeding might have been different is not enough to establish prejudice in an ineffective assistance of counsel claim. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).  For example, in *Huffington v. Nuth*, 140 F.3d 572, 582 (4th Cir. 1998), the Court found that counsel's failure to obtain potential witness testimony in favor of the defendant was not material because there was an "overwhelming" amount of other evidence against him.  Similarly, in this case confidence in the jury's decision is not undermined by trial counsel's failure to use Burrell's nickname in cross-examination, because there was substantial other evidence linking the crimes to drug trafficking,

including testimony from co-conspirators.[6]  This testimony includes references to conversations with Corey Smith and Bo, in which they portrayed the contracts as drug-related, as well as testimony from Linwood Omar Smith, Jr., indicating that Stringfellow himself had told him the "beef" was drug-related.[7]  The consistency of the testimony characterizing the contracts as a result of "beef" over controlling drug sales in the neighborhood was no doubt sufficient evidence by which the jury could find that the murders were connected to drug trafficking.[8]

> b. *Counsel's decision not to allow the corroborating testimony of Jermaine Bell does not demonstrate ineffective assistance of counsel.*

Petitioner posits that his attorney erred in deciding not to call Jermaine Bell to the stand to testify that the purpose of the killings was retribution.  Pet'r's Am. Reply 2-3, ECF No. 393.  This assertion also does not meet the *Strickland* factors, particularly because defense attorneys are given substantial deference with respect to tactical decisions made during a trial, including deciding whether to call a witness.   466 U.S. at 694 ("[The] defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").  *See also, Roach v. Martin*, 757 F.2d 1463, 1478 (4th Cir.), *cert denied*, 474 U.S. 865 (1985) (dismissing an ineffective assistance of counsel theory as "clearly a product of hindsight" that did not establish unreasonable strategy on the part of trial counsel).  In *Roach v. Martin*, for example, counsel decided against attempting to establish that his defendant was involuntarily intoxicated because that defense would make the defendant's testimony less credible to the jury.  *Id.*  Similar to the defense attorney in *Roach*, Petitioner's counsel submitted an affidavit noting he decided not to call Bell to the stand because at that time Bell had pled guilty and admitted under oath that the murders were related to drug-trafficking, and thus he

---

[6] See note 4.
[7] See note 4.
[8] The Fourth Circuit's opinion in this case noted that the evidence was substantial enough to uphold the jury's conviction.  Judgment No. 09-4205 at 2-3, ECF No. 335.

would be a better witness for the Government than the defense.  Tayback Aff. 1, ECF No. 386-1.

It is apparent that the decision not to allow Bell's testimony was a strategic one made within the

wide range of reasonable professional assistance, and thus does not demonstrate ineffective

assistance of counsel.

Even if counsel's decision not to call Bell to testify did fall below an objective standard

of reasonableness, it cannot be shown that but for that decision the proceedings would have

yielded a different result.  Petitioner argues that because the jury was denied the opportunity to

hear testimony from Bell, they were able to conclude that the killings were drug-related.  Pet'r's

Am. Reply 2-3, ECF No. 393.  However, at the time in question Bell had testified under oath in

his own case that the killings were drug-related.  Gov.'s Opp'n 7, ECF No. 386.  There appears

no basis for concluding that Bell's testimony would have rendered a different result in

Petitioner's trial, particularly since he would have had to contradict other co-conspirators and

also admit to lying under oath.[9]  *Id.*  It has not been shown that, but for counsel's decision not to

call Bell to the stand, the proceedings would have rendered a different result, and so this

ineffective assistance of counsel claim must fail.

## II.    Petitioner's *Brady* Claim

Petitioner argues that the prosecution withheld *Brady* evidence, namely a Baltimore City

Police Department Report from July 9, 2001, and an interview with a close friend of Jermaine

Bell.[10]  Pet'r's Am. Reply 3-4, ECF No. 393.  Both indicate that the murder of Harris was in

response to the 1998 killing of Burrell.  *Id.*  Petitioner suggests that the failure to provide this

evidence violates *Brady v. Maryland,* 373 U.S. 83, 87 (1963), which establishes that irrespective

---

[9] Bell did eventually recant his testimony indicating that the killings were drug-related, instead asserting they were retaliation for Burrell's death, but that did not occur until his sentencing hearing, which itself did not occur until after Petitioner was sentenced.  Gov.'s Opp'n 16, ECF No. 386.

[10] Those exhibits include the following: FBI Report, ECF No. 372-6 and Henry Davis Interview, ECF No. 393-3.

of good or bad faith, the prosecution's failure to turn over exculpatory evidence violates a defendant's due process.   To demonstrate a *Brady* violation, Petitioner must show the evidence in question meets three factors: (1) the evidence was favorable to the defendant because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material to the defense.   Petitioner fails to demonstrate the second and third factor, and so his *Brady* claim fails.

Petitioner may have met the first *Brady* prong.   The evidence in question could support his claim that the killings were motivated by revenge rather than drugs.   Pet'r's Am. Reply 4, ECF No. 393.   To make out a *Brady* violation, however, the evidence must be more than simply favorable to the defendant—it must also be suppressed and material to the defense.   In this case, the information contained in the report was neither suppressed nor material; thus, it does not support a *Brady* claim.

In order to meet the suppression prong, the Petitioner must point to evidence which is "information . . . known to the prosecution but unknown to the defense*."   United States v. Agurs*, 427 U.S. 97, 103 (1976).   The information contained in the report does not introduce any new evidence, but rather summarizes information available to Petitioner's counsel in at least four other forms produced by the police.   Specifically, a transcript of an interview between the leader of Bell's drug organization and a city detective, a transcript from *State v. Garrett*, testimony from *State v. Garrett*, and a transcript from *United States v. Roberts* all contained information which tended to establish that the murders were in retaliation for the murder of Damon Burrell. *See* Tr. of Samuel Garrett 2-3, ECF No. 386-2; Tr. of *Maryland v. Garrett*  Case No. 102137018 at 17, 22 ECF No. 386-3; Test. of Calvin Harris 3-4, 8-9, ECF No. 386-4; Test. of Corey Smith

6, ECF No. 386-5.  Because the report and interview did not contain information known to the prosecution but unknown to the defense, the second *Brady* prong is not met.

Finally, even if the evidence had been suppressed, the third prong of *Brady* is not met. There is not a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Bagley v. U.S.*, 473 U.S. 667, 682 (1985). The report and interview, while indicating retaliation as the motive for the Harris murder, do not overshadow the significance of the large body of evidence produced at trial that connected the murders to drug trafficking.

### III.  Petitioner's Jurisdiction Claim

In Petitioner's original Motion to Vacate and Set Aside Sentence Pursuant to 28 U.S.C. § 2255, he argued that this Court lacked jurisdiction because the murders did not occur in the furtherance of a drug trafficking crime.  Pet'r's Mot. 24, ECF No. 372.  This argument was left out of Petitioner's amended brief, and the Court may briefly dispose of it by noting that the jury determined the deaths were in fact in furtherance of drug trafficking.  Verdict 1, ECF No. 238. Because the jury found an interstate nexus beyond a reasonable doubt, there is no question this Court has jurisdiction.  *Id.*

### IV.  Petitioner's Right to Fair Trial

Petitioner also asserted in his original Motion that the prejudicial and hostile courtroom environment, such as extra guards and scanning equipment, violated his Fourteenth Amendment right to a fair trial.  Pet'r's Mot. 21, ECF No. 372.  This argument was also left out of Petitioner's amended brief, but can be evaluated briefly by this Court.  The Supreme Court has noted that any practice which is inherently prejudicial to the defendant must be subject to close judicial scrutiny and justified only when necessary to some specific state interest.  *Holbrook v.*

*Flynn*, 475 U.S. 560, 569 (1986).  The Court addressed the issue of extra security in *Holbrook v. Flynn*, where it counseled against employing the "presumption that any use of extra security guards in the courtroom is inherently prejudicial," and instead recommended a case-by-case approach to determine when circumstances exist that show a juror may have reasonably drawn an improper inference from the extra security.  *Id.*  In Petitioner's case, the additional security measures instituted by this Court, including extra marshals in the courtroom and scanning equipment outside of the courtroom, were justified by concerns about alleged threats to the safety of witnesses and jurors.  Tr. 160-161, ECF No. 308.  There is no evidence to suggest that the courtroom was prejudicial because of the implementation of extra security measures, particularly since the jury had no reason to belief the safety measures were abnormal.  Thus, there is no support for Petitioner's assertion that his right to a fair trial was violated.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 372) is DENIED.  Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38

(2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because reasonable jurists would not find the Petitioner's claims debatable, a certificate of appealability is DENIED.

   A separate order follows.

Dated:   February 13, 2013

          _____/s/_____
          Richard D. Bennett
          United States District Judge